Committee 182001 Stephen Darr v. Plaintiffs' Interim Executive Committee. Thank you, Dan. Good morning. May it please the Court, Robert James Monsignore for the MDL Appellant, Telex Free Victims, Parties and Interests. If I may, I'd like to reserve five minutes for rebuttal. Five minutes? Yes. Yes. All right. The Instant Appeal seeks to establish the personal rights of the victims of the Telex Free Parentage Scheme to bring suit on their own behalf. To recoup monies they paid directly to individuals who recruited them into the scheme and who took the money and were unjustly enriched by the receipt. It's worth noting that those recruiter participants, the net winners, at all times maintained exclusive possession and control of the funds handed over to them by the appellant net losers. It's also noteworthy that Telex Free never controlled or physically possessed the funds in issue. They never had a valid or enforceable right to them. Here at best, and there's no dispute about this, Telex Free was a wholly criminal enterprise from start to finish. Therefore, the trustee stands in the shoes and is, in fact, a wholly criminal enterprise from start to finish. The district court committed reversible error based upon one simple overriding principle of law that goes all the way through all the different machinations that will come about and I'm sure that you'll question me on. It's very simple. A wrongdoer with unclean hands cannot create a valid legal interest where there is none. The authority for that that I direct your attention to is 469 F. 3rd. 143. 206. Nisselson v. Learnout. That's a First Circuit case where cert was denied by the Supreme Court. There are others, but I think that's a good place to start. It's also very important to take note and consider the context of why we're here. There has been no legislative mandate and there has been no sound public policy argument placed before this court in support of what would amount to a radical expansion of the statutory power of a trustee. The issue to be decided here is a very serious one and that will have long-ranging effects. What we're trying to do is return... I don't want to jump to this issue too fast. My colleagues want to ask about whether the bankruptcy court erred in concluding that the trustee could bring an avoidance action of this type and I understand everything you said is contesting that finding. Yes. But assuming that the bankruptcy court did not err in that regard, I understood you to be making a separate argument that the unjust enrichment claims were not derivative. The unjust... What is that argument? Okay, they're absolutely not derivative, so we'll set aside that... But for purposes of making this point... Yes. If you could stick to only arguments as to why they're not derivative that assume the trustee can bring the avoidance action. I will do that as instructed. In the first place, the unjust enrichment claims are not dependent upon the transfer of funds by Telex Free. Secondly, the unjust enrichment claims are injury caused by net winner's conduct. The net winner's conduct caused the injury to the losers. Telex Free did not cause that injury to the net losers. Also, Telex Free, and this is important, suffered no injury by the net winner's receipt of payment. And that does go back to the fact that they're an illegal enterprise. They have absolutely no right to have the enforcement of the law. That's a very important point that the courts have over and over again said that they're not going to enforce the... But in the unjust enrichment scheme, aren't you going to have to prove the Telex scheme was fraudulent? That's already been admitted by the trustee. There's absolutely no... There's no contest that it was an unjust... Sorry, wholly unlawful criminal enterprise. Right, but I'm just saying, since that's integral to the unjust enrichment claim, in what sense is it not derivative of the claim that the avoidance action is going to be making? I think it's separate because the actual top promoters, the net winners, also engaged in their own activity without the Telex Free involvement. They took a model and did their own thing here. So let's say that... I suppose put it to a drug context. Pablo Escobar is in Brazil. Oh, I'm sorry. And he's making...Colombia making all these drugs. It comes over here and the person on the street sells it. The harm caused by the person selling on the street is part of what was going on. It was part of this overarching global criminal enterprise selling cocaine, but the person on the street did their own bad act by selling the cocaine. So here, Telex Free... Are your unjust enrichment claims going to be trying to prove fraudulent intent on the individual part of each of the recruiters? No. Well, the only way you can avoid doing that is by just proving that they're part of the whole scheme, aren't you? That they were unwitting parts of the Telex scheme. And yet, that's going to be foundational to the avoidance action also, isn't it? I think so. I don't necessarily agree with that. Okay. Why not? Well, again, because they're not dependent on the transfer of the funds by Telex Free. And Telex Free suffered no injury when it was received of the payment. And the actual injuries were caused by the top promoters. They weren't caused by Telex Free. It sounds to me as though this argument is a rejection of the bankruptcy judge's attempt to characterize this entire set of transactions as a single triangular transaction. Yes. But it seemed to me that that was a perfectly sensible way to characterize it, since the various parts are each interdependent upon each other. Thank you, Judge Saylor. I understand what you said. Judge Barron, did you have a question? I just wanted to hear your answer to Judge Saylor. Again, I think that you need to have more than that. I don't think that the triangular transaction takes into account the status of the law. I think the triangular transaction disregards and overlooks the fact that Telex Free never had a valid legal interest in these funds. And if you adopt the triangular transactions, I'm sorry. Excuse me. Doesn't it depend on whether the nature of Telex Free's interest was entirely void and thus non-existent, as you claim, or whether it was merely voidable and thus subject to defeasance, as the trustee asserts? Well, I think that it couldn't be more clear that we are asking and that we took action to make it void. I think the trustee argued that we never did. I don't know what else we could have done but to file a case and argue and end up in the appeals court. The victims do not want to give up this claim. They absolutely do not. I'm sorry. It's very personal to them. They want to advance their own claim. Counsel. Yes. I'd like to clarify your answer. Yes. Judge Selye asked you the question about void versus voidable. I understand your answer to be voidable but we took steps to make it void and that's all we needed to do. Is that your answer? No, I think that's void. Okay. Let's go back to void versus voidable. I believe, we believe, the claimants believe that these are void because they are from the beginning to the end unlawful. And the courts are not in the business of enforcing unlawful contracts. And so to adopt the voidable, that's the point I was making, to adopt the position that these are voidable contracts, has the court getting into the business of getting in and interacting with criminal conduct, unlawful conduct. The courts are now a referee in a criminal, unlawful enterprise. And that's not what the law says that the court should do. In fact, the law says the court should avoid getting involved in that. And there's two reasons. First of all, they're not going to do it. Secondly, it's a deterrent to people who want to get involved in unlawful enterprise, that they will not have the benefit of the law, of the courts coming in and enforcing unlawful contracts. You have reserved five minutes. Yes. Thank you. If it pleases the Court, Harry Murphy, I represent Stephen Dodd, who's the Chapter 11 Trustee in Bankruptcy of Telex Free. I think for one way to look at this, it's relatively simple. Two bankruptcy statutes are at issue here. Courts look to Section 541 of the Bankruptcy Code to determine what is property for avoidance purposes. And Section 541 provides that property consists of all interest of debt of intangible and intangible property, wherever located and by whomever held. Obviously, physical possession is not a requirement to be property under Section 541. For avoidance purposes, property is that which would have been part of the bankruptcy estate had it not been transferred prior to the bankruptcy filing. Counsel references that there was no injury. The complaint here and the bottom line issue here is that membership fee would have been otherwise property of the bankruptcy estate had it not been transferred to a net winner. The injury is, obviously, is there's less money to pay the net losers in this bankruptcy case. I'm not sure this question matters for the ultimate outcome, but it does seem to me it matters for how we reason our way through it. Is the property of the estate the avoidance action, as some circuits seem to treat it? Because the way you're describing it, the property is the funds. But some circuits, I think, not unsensibly, treat the property of the estate as the avoidance action itself. And the problem with the derivative claim, then, is that it seeks to control the property of the estate precisely because it's derivative. That seems different than the way you're characterizing it because you seem to be focusing on the funds themselves. I had thought one way to think about it was we focus on the funds just to determine whether they have standing to bring the avoidance action. And the avoidance action then becomes the property of the estate. And so long as the claims are derivative of that avoidance action, the stay applies. Your honor is correct. There are two schools of thought on whether property that's been fraudulently conveyed or preferentially transferred is not property of the estate until actually recovered. Exactly. That's clear in the facts. And here it hasn't yet been recovered. It has not been recovered. So the only property of the estate could be the avoidance action itself. Isn't that right? That is correct, although courts look at it both ways. I thought it was property which had it not been transferred. Yes. And that is the resolution of this. That's what I'm trying to get to. There's a pretty close decision in BEG, IER, I can't pronounce it, versus U.S. It's 496 U.S. 53, said just that. Property is that which would have been part of the bankruptcy estate had it not been transferred prior to the bankruptcy. But is that – So determining what is a transfer of property for avoidance purposes, that's the test the court should apply to determine whether there's a property issue in question. Yeah, but there's two different – in order to be able to bring an avoidance action, it has to be seeking property of the estate. That would have been property of the estate by the fact that it had been transferred. But that's not our question. Okay. Because the avoidance action hasn't come to fruition yet. Well, it was brought. Correct. But it hasn't not reached judgment. That's right. So the actual property in the estate now is the avoidance action. That's right. And the courts held, and the courts have consistently held – The avoidance action. Yeah. It's enough that there was standing to bring an avoidance action. That's correct. And the courts consistently and universally hold – Do we have to decide – – that the trustee and bankruptcy has an exclusive right to bring avoidance actions under preferences to frauds and conveyances to come back exclusively. I think the court's decision in Ontos – I think I was actually involved in that particular case – can't bring a preference claim, nor can they repackage a claim and call it something else if the net effect of this is to accomplish the same thing. And are some of the unjust enrichment claims seeking money outside the two-year window for an avoidance action? Well, actually, the scheme here, Your Honor, went for three and a half, four years. So what is the relevance of the fact that some of the unjust enrichment claims might be seeking funds that are outside the two-year window, wouldn't be within the scope of the avoidance claim? It would be, Your Honor, under 544B, the bankruptcy trustee has two avoidance powers. One, under federal bankruptcy law, under 548. And under 544B, he stands in the shoes of any creditor, a hypothetical creditor, to assert rights under state law, which is a four-year look back. So we have asserted both. There are two pending class actions against net winners pending before the Bankruptcy Court, which the defendant classes have been certified by the Bankruptcy Court, Judge Hoffman. Weiland is against domestic net winners of approximately 30,000 in number, and foreign net winners of about 80,000 in number. And is the analysis of whether the unjust enrichment claims are derivative the same as to both, or does it matter that there's different types of? No. Net winners have been defined as the same way as net claims in a bankruptcy. If you get more in, then it's took out, including direct or indirect. And the reason it's derivative, in your view, is because it's just requiring the proof of the same fraud? Yes. And you look at the cases, and there's some cases. If you look at the Madoff trilogy of cases, one, two, and three, or you look at other cases, and you see what type of claims courts have found as derivative, and that's what you have not. Here, it's important to note, all that has been asserted here by the PIEC, the Appellant in front of District Judge Hillman, is an unjust enrichment claim. There's no allegation of fraud, misrepresentation, breach of fiduciary duty. You'll find cases, the law gets a little more complicated, where a creditor is, while a trustee in bankruptcy is suing a creditor for fraudulent conveyance, a creditor is separately saying, hey, you owed a fiduciary duty to me. You made a, particularly, you made a fraudulent misrepresentation. You did something to me personally. There are no type of what they call particularized claims that have been asserted here. By the very nature of it, they couldn't have been in the class action that's been brought. That's what's distinguished all this, and that's why I think it's a simple matter, when you apply the definition of what is property estate, which doesn't require possession, it doesn't require that the title, if you will, the courts follow, is the feasible title. It's votable, but not void. And the bankruptcy court found, as adopted by the district court, that no participant sought to repudiate the transaction prior to the bankruptcy file. So with that finding, as I understand it, is not on appeal, not been challenged. That's the record. We have transactions. People invested in Madoff. They invested in Telex Free, if you will, the analogy. No one sought to repudiate their investment until it blew up, if you will. And then, obviously, we have to sort out the damage here, which in this case has been a considerable five-year effort at this point in time. We have over a million victims located around the world, and we're trying to use a centralized forum to collect money and distribute it so that it loses its esteem. Judge Lynch, I think, asked you whether we had to decide whether the property – we have to decide this threshold question of whether there's an interest in property such that you could bring an avoidance action. I think that's right. Or some version of that issue. But you said that there were – whether we should think about the property that is at issue as the avoidance claim itself, such that the derivative action is then controlling that property and for that reason triggers the stay. I think that's the better view. Okay. If that's – That wasn't the question. But the question is whether we have to decide whether it's the better view. I'm not sure you have to. Okay, well, if we do it the other way, I'm just trying to figure out how the analysis goes. Well, we don't say anything. Well, I'm trying to think if there's a way to – we can't not say anything if the analysis is appreciably different. We'd have to do two analyses. So if we treat the property of the estate not as the avoidance action, but instead as the interest in the property that's the predicate for the avoidance action, like the funds, the derivative issue is then irrelevant. I think so. Yeah, you wouldn't ever get to the derivative issue. I don't see a way to tell you the truth. I don't see a way that I can – But we only would reach the derivative issue – we have to reach the derivative issue so long as it's possible that the property of the estate is the avoidance action itself. I'm not certain about that. I can't – Well, if the avoidance action is the property, the only way that the estate is triggered is if it's a derivative claim, right? Well, there's two schools of thoughts of what state section has been violated here. One is section 362A3, whether it's an action or whether it's 362A6. And you'll see cases – the Second Circuit seems to adopt it as an A6 action, which is an act to collect a claim against the debtor, which is not meant to say you're trying to collect it against the thing, but you have a claim against the debtor, which certainly these people and these victims, as Mr. Bonsignori has referred to, people who put money into this are victims. If they try – if there is – if you read A6 literally in some of the case law, that case law stands for proposition, that that stays in the act to collect the claim against the debtor for this purpose, as I read it. And that's the way I read the Second Circuit's decision. And that's independent of whether there's a derivative claim then? That's right. I see. So that's a third route for deciding it. That's right. And then you have a fourth route, which is section 105 that you threw in. Which is one of the first Madoff decisions we're saying when Madoff first broke and everyone's going to – it was a rush to the courthouse. We're going to say, we don't know yet, but we're going to stop all this stuff. We're going to control it all. Now, one thing that I didn't see any evidence in the bankruptcy court's decision that it was ruling under 105, though. No. We argued it. Right. The court didn't need to get there because it finally – So we didn't have to make some findings in order to trigger 105? We can't now make it a 105 case on this record, can we, without the district court even having passed on it or the bankruptcy court? Well, you argued in your brief we could. I think we fully presented in the brief. You presented, but you didn't really explain how we could do it when the bankruptcy court didn't say anything. I think on this record you can go either way. Because the record is, again, I think not disputed. It went into the court on summary judgment, cross-motion for summary judgment. The facts are not disputed. What happened here is not disputed. The fact that everyone, you know, it was a clever, ingenious Ponzi pyramid scheme where they had people who joined Teller Street, but $3 billion of membership plans were sold. Let me ask it one last way. If we just assume that the property of the estate is only the avoidance action, and we were to conclude that even on that assumption, the stay would apply because there were derivative claims, we wouldn't have to resolve whether that was the right analysis. Because, or we would, right? See, I'm just trying to figure out what we have to decide and what we don't among the many paths that you've given us here. And given that every time you mention a path, you seem to say there's a split on whether that's the right way to decide. How courts get to the bottom, get there, and what they've looked at and how they rationalize it is no different from what I'm trying to say. Courts that have struggled with it is where there's that independent tort claim, if you will, floating out there. But here, where property of the estate, once you make a determination that property of the estate, as the Supreme Court has defined it, property that would have been part of the estate but for the transfer, once you find that, then it becomes subject to an avoidance action. You look at on toast to this court's decision and say, the trustee has an exclusive right to bring that claim. The question is, is this claim something different other than just a derivative way of trying to get at the same apple? And I suggest it is. And I think that there you could just stop right there if the court wanted to. What are the prospects for recovery? Good. In fact, excellent. Right now, the trustees have been working very closely with Homeland Security, the FBI, and the U.S. Attorney's Office. There was simultaneously with the bankruptcy filing, obviously we came in after the fact appointed by the court, there were seizures by the federal government. So right now the trustees have been turned over about $145 million from the federals. We've collected about $20 plus million from our side out of the bankruptcy. The net win over litigation is obviously the major part. It's estimated that they allowed claims in the bankruptcy case of about $400 million. We're still in the process of determining claims. But that's going to be a meaningful recovery in one of these cases where sometimes there's only pennies in a dollar. It's not going to approach Madoff where this was a small ticket, if you will, a small ticket, the average investor put in $1,425. To get out maybe a 40-plus percent recovery here is going to, even without regard to the net winnings, if we have meaningful recovery in that, obviously that's going to be substantially more. I believe we'd better reserve some time. If there's something that you feel a need to respond to, we'll give you another minute afterwards. Thank you. I appreciate it. Before I begin with the rebuttal, I'd like to take a second and make an attempt to recalibrate the court's thinking. I'll explain why. I'll jump off on Judge Lynch's question whether the prospects are success. We were in the case for a very short period of time, and we attached one top promoter for $8 million. That particular top promoter wasn't even on the radar screen of the FBI, Homeland Security, all of them, and certainly not on the radar screen of the trustee. The reason we were able to attach that is because we are in touch. We are the people who were ripped off. We know who were handed the money. We had a bunch of other names to go after, and we're in joint. There's nothing worse, there is nothing worse to an American than to have your right to go after someone who ripped you off or someone who caused you wrong, taken away. And that's exactly what's happening here. And nothing is worse, there is something worse than that. That's handing over the right to go after the person who ripped you off to the person who ripped you off. And now I'll begin. The court should not lend the good offices to mediating dispute among wrongdoers. That's Nielsen v. Lernow, 469 F. 3rd, 143. That's a First Circuit case, cert denied. And I already talked about the deterrence. What we have is a situation here where the bankruptcy trustee is a limited, it's a fiction, it's not a person, it has no rights, it's created by statute here. There's been no statutory mandate to expand the rights of the trustee. According to 11 U.S.C. 547, they're limited. A bankruptcy trustee can recover for the benefit of the estate only those transfers which are of an interest in the deterrent property. There's another case, Sender v. Buchanan, 84 F. 3rd, 1281. And it says a trustee cannot succeed to any greater rights in such property than a pre-bankruptcy debtor had. And that's my whole argument. The pre-debtor here is a criminal enterprise. It's an unenforceable contract. They had no right to any of it. They had a zero right to it. And so what you're doing is you're going against all this legal precedent and you're taking off with this. The district court acknowledged all reported decisions in which courts have recognized a bankruptcy trustee standing to bring avoidance actions to recover funds transferred by a Ponzi scheme debtor involved funds actually in the debtor's possession. That's the opinion at page 21. Here they didn't have possession. If you want to go further, constructive possession, which is what the district court and the bankruptcy court have documented, constructive possession requires three things, ability and intention to exert exercise, dominion, and control. Here, Telex III never had a valid ability to control the funds, and they never controlled the funds. They've gone way beyond what has ever been allowed, and they've gone way beyond what should be allowed, and in doing so, what they're doing is they're taking the right of these people who lost every dime that they've had. Many of them lost every dime that they had, and now to add insult to injury, it's being given over to Telex III to collect, and I just can't think of anything more wrong than that, so that's why I'm asking you to please recalibrate the way you think. Is it convenient? Is it easy to do? Yeah. The law is not meant to be convenient and easy to do all the time, and the people who want to go and fight, where it's not easy and it's not convenient, are the people who have been wronged. These people have been wronged, and they really deserve their right to be able to go at the person who wronged them themselves, and they know who they are. The trustee looking at all these papers did not, and the claims rate is pathetic, so what's the likelihood of success? First, they're not going to know who the people gave the money to on the street. Failure. The second thing is, are the people getting paid? No. The claims rate is pathetic. That's number two. Thank you. I'm sorry I got a little animated, but thank you. I really believe in this cause, and these people want their rights. Thank you, Counsel. Counsel, for the trustee, do you want to say anything? No, Your Honor. Thank you. I just want to refer to a suripply. We are not Telex III. The trustee does not step into the shoes of Telex III. The distinction here is, if the trustee was trying to pursue causes of action that belonged to Telex III, obviously we would be tainted with Telex III's conduct. We couldn't do things. What we're asserting is avoidance actions created under the Bankruptcy Code, and the law is unanimous that the conduct of the debtor doesn't affect the trustee's ability to collect funds from the bankruptcy instead through avoidance actions. Otherwise, the Madoff trustee wouldn't have been able to collect money for anything, and that's the distinction between a 541 action under a property to collect prepetition cause of action versus the exercise of avoidance actions. Thank you. Thank you. Thank you both.